Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Mary S. Shostak presiding, along with Justice Donald C. Hudson and Justice George Bridges. The case is number 2170453, People of the State of Illinois, Plaintiff Appellee v. Joel D. Shelton, Defendant Appellant. Arguing for the Appellant, Aaron S. Johnson. Arguing for the Appellee, Ivan O. Taylor, Jr. Okay, as counsel indicated, please mute your phones when you're not speaking. This way, no one will hear any of your back noise during their argument. If both sides are ready to proceed, the Appellant may proceed first. Thank you. Good morning, Your Honors, counsel. May it please the Court. My name is Erin Johnson with the Office of the State Appellate Defender, and I represent the Defendant Appellant in this case, Mr. Joel Shelton. This case comes on appeal after Mr. Shelton's criminal conviction for the offense of driving under the influence of alcohol. The only issue in this case is whether a report from a 911 caller that a driver is asleep at an intersection for an unknown short period of time before driving safely away is enough to provide reasonable suspicion for a traffic stop. And based on the U.S. Supreme Court decision in Navarrete v. California, it is not. The parties in their briefs and this Court in its January 17th opinion agree that the U.S. Supreme Court decision in Navarrete controls here. However, this Court's opinion improperly expands the narrow holding of Navarrete. In Navarrete, the police stopped the Defendant's vehicle based on a report from a 911 caller that the Defendant had run her off the road. The Supreme Court found the report in that case gave the police reasonable suspicion of an ongoing crime such as drunk driving. Significantly, the Supreme Court stated in its opinion that Navarrete was a closed case. The Court held the 911 call in that case was enough because the caller alleged a specific and dangerous result of the Driver's conduct, running another vehicle off the road. This case lacks an allegation of a specific and dangerous result of the Defendant's conduct which was present in Navarrete. In its January 17th opinion determining the 911 call here provided reasonable suspicion, this Court added speculation about harms that were not actually present in this case. In this case, the caller did not allege a dangerous result of the Defendant's conduct. All the caller reported was that the Defendant appeared to be asleep while stopped at an intersection. The caller then quickly followed up that the Defendant was driving down the road to Culver's and had entered the drive-thru lane of the restaurant. The caller did not report any dangerous conditions or results of the Defendant being asleep at the intersection. The caller did not report the Defendant was causing an obstruction, that she had to maneuver to avoid him, or that even he was stopped inappropriately at the intersection such as at a green light. Further, the caller did not report any dangerous driving by the Defendant as he proceeded down the road and into the Culver's drive-thru. In this case, there simply was not enough information in the 911 caller's report to give the officer reasonable suspicion based on NAVARETTE. Because there was a lack of reasonable suspicion for the traffic stop here, trial counsel should have filed a motion to suppress. Despite the fact the motion was not litigated below, the State admitted that the only basis for the stop here was the 911 caller's report. All the evidence in this case flowed from the illegal stop. Therefore, had counsel filed the motion, the State would have been unable to prosecute Mr. Shelton. Because the 911 calls did not provide a reasonable suspicion for the stop of Mr. Shelton's vehicle, and the suppression of evidence flowing from that stop would have prevented the prosecution of Mr. Shelton, we believe the appropriate remedy is that this court reverse Mr. Shelton's conviction for driving under the influence outright. Thank you. Thank you, Ms. Johnson. You'll have an opportunity for rebuttal. Are you ready to proceed? Justice Shostak, would you like the panel to give questions for Ms. Johnson? Oh, right. I am so sorry. I was just going to go right through it. Yes. Who do we have? Justice Hudson, do you have any questions of Ms. Johnson? I do. Can you hear me, Ms. Johnson? Yes, I can. Okay. Would you agree that under the case law, the question of whether to move to suppress evidence generally is a matter of trial strategy? Is that right? Generally. Okay. Is it also true that under the existing case law, courts will presume that the trial counsel had a legitimate strategy for filing or not filing a motion? Is that correct? That's true, but the presumption can be overcome, as in cases, this one, where a suppression motion would have prevented all the evidence, and it would have been successful. All right. The defendant to prevail on a claim of ineffective assistance for failing to file a motion to suppress would have to show that the unargued motion to suppress would ultimately have been successful, correct? That's correct. Okay. I'm intrigued by your argument that there was nothing about the driver falling asleep at night at an intersection doesn't constitute a real danger. Therefore, the officer should not have affected a traffic stop. So, looking at it from the perspective, if the officer had rolled up next to this person and seen the person personally sleeping asleep at an intersection at night, are you saying the officer wouldn't have had any reason to approach the vehicle? No, I'm not suggesting that at all, Your Honor. However, it's a very different case where the officer personally observed a dangerous condition. And also, in the scenario you lay out, the officer could have had a different reason, such as community caretaking, for approaching a sleeping driver. But the real issue here is we don't have Officer Beeman, who ultimately pulled Mr. Shelton over, witnessing anything at all. This was entirely based on the anonymous 911 call. And that's where NAVARETTE becomes so important. Because there is a significant danger in allowing anonymous 911 reports to be enough to stop a vehicle. And that's what the court in NAVARETTE recognized. And that's why they set this bar of it needs to be enough to give the officer reasonable suspicion. And the key in NAVARETTE was there was a report from that caller of a specific dangerous result. I'm not arguing that there couldn't be a situation where it's dangerous for someone to be sleeping behind the wheel. What I'm saying is that in this case, there simply was not enough facts given by the 911 caller to the officer for the officer to make that stop. Because we don't have any specific dangerous results here. We don't have any information that he was, like I said, stopped inappropriately. We don't even know how long it was. Based on the facts, it was short because the caller followed up immediately to say, okay, he's driving and he's going to this restaurant. So I want to be very clear that it's not that the sleeping behind the wheel could never be dangerous. What I'm saying is in this case, there simply was not enough information provided to the officer for the officer to stop Mr. Shelton based on this 911 call. I understand the argument. You're arguing that there's nothing about this conduct or behavior of falling asleep at night at an intersection to be a dangerous result. Where are you getting the element of having to establish a dangerous result before the officer can effectuate a traffic stop? Well, from NAVARETTE. And again, in NAVARETTE, what the Supreme Court said was that there needed to be, that the reason that caller saying that they were run off the road was enough to effectuate the stop was because they alleged a specific dangerous result of the driver's conduct. Here, there's no allegation that Mr. Shelton being momentarily asleep at the intersection had any dangerous result. The caller doesn't say, I had to swerve to avoid him. And again, as I said, there's not even information that he was stopped inappropriately here. So again, from NAVARETTE, the Supreme Court was clear. And I would emphasize, if you look at the decision in NAVARETTE, it talks about the case of NAVARETTE where the person said that they were run off the road by the driver. The Supreme Court found that to be a closed case. And here, we have less than that. So it falls on the other side of that line where it just is not enough for reasonable suspicion. Well, I'm intrigued by your interpretation of NAVARETTE. In NAVARETTE, didn't the court note that it must determine whether the 911 report created a reasonable suspicion of a crime such as drunk driving? So at night, somebody falls asleep behind the wheel of a car at an intersection that would not provide a reasonable suspicion of drunk driving? Again, I think there's lots of reasons why someone could be momentarily asleep at an intersection. And I would note, just before anyone brings this up, in NAVARETTE, they said the officer doesn't have to eliminate all innocent explanations. And I'm not suggesting that they do. What I am saying is that in NAVARETTE, the court made it clear that it has to be more than just – it has to be a reasonable suspicion of ongoing crime, and I'm quoting, such as drunk driving as opposed to an isolated incident of past recklessness. So there has to be a reasonable suspicion that's ongoing. And then the court goes on to say that because this caller alleged a specific and dangerous result of the conduct, that made this enough, but it was a closed case. Right, but there's a difference. I agree with what you just said, alleged, but that's the question. Does it have to allege a dangerous condition in addition to the reasonable suspicion of drunk driving? But I understand your argument. That's all I have at this point. Thank you. Thank you. Justice Bridges, any questions? Yes, thank you, Justice. Ms. Townsend, my question that I have is sort of a follow-up to what Justice Hudson asked you, and that is, in light of your agreement that it is – that an emotion to suppress evidence is generally a matter of trial strategy, you agree that if the defendant had filed a motion to suppress, the state could very well have raised a community caretaker function. Isn't that correct? I would disagree with that in this case. Because if the community caretaking isn't implicated by the facts here, I think if you look at – and I know in the January 17th opinion, this court, there was a footnote citing to People v. McDonough, which is an Illinois Supreme Court case on community caretaking. If you look at McDonough, in that case, they talked about the fact that for there to be community caretaking, there must be a purpose other than investigating a crime. And then it has to be – the seizure needs to be reasonable to protect the safety of the public. And both prongs need to be present. Now, here, we don't have a purpose other than investigating a crime. And we know that. And what I had said earlier, despite the fact that this motion was not filed and not litigated below, there was litigation prior to trial where defense counsel sought to exclude the statement of the 911 caller from trial, and the state advocated for being allowed to elicit that from the officer. And the state put on the record twice at this hearing on Emotion Eliminated, it appears at R216 in the record, that the only basis for the stop in this case was the caller's statement. So, there was no other basis for the stop, and the state admitted that twice. So, here, we don't have anything other than Officer Beeman stopping Mr. Shelton based on this caller's report that he appeared to be asleep. But by the time Officer Beeman encounters Mr. Shelton, he has driven away, down the road, entered the Culver's drive-thru, and then proceeded out of Culver's and onto a new road. And Officer Beeman admitted at trial that he didn't witness any dangerous driving or anything else like that. So, there's no community caretaking implicated here. It's not like McDonough. So, even if there had been a motion, the state would not have prevailed on a community caretaking argument. Okay. Let me ask you this. In light of the case you cited in Aberrett, doesn't falling asleep at an intersection suggest at least some decreased vigilance on the driver's part? I would say that it could, but again, my point here is that we don't have enough facts in this case. This caller stated that Mr. Shelton appeared to be asleep at an intersection. We have no idea for how long. All we can know from the fact is that it had to be short enough for the caller to follow up and say that he was moving away and going to this restaurant before the police could even respond. So, I'm not suggesting that there couldn't be decreased vigilance, but there's lots of reasons that someone could appear to be sleeping at an intersection. And here, without any other information from the caller, without any report of any dangerous conditions, any dangerous driving by Mr. Shelton, there's simply not enough to provide that reasonable suspicion that the police need to pull him over. So, you're assuming that a stop at an intersection, a sleep, is not a dangerous condition? I'm not saying, well, I'm saying that given that we don't know that it was a dangerous condition in this case, he may have stopped at a red light and nodded off for a second. Okay. Let me ask you this. So that I'm clear with respect to this information from the caller, are you challenging the reliability of the information provided by the caller, or only that that information doesn't establish the reasonable suspicion to justify the stop? I'm not challenging the reliability. I'm saying that there simply is not enough information from this caller. Based on Navarat, the fact that there was an 911 call, does, you know, based on Navarat, does have, it's reliable. Thank you, Ms. Johnson. Thank you, Ms. Gynes. No further questions. Thank you, Justice Johnson. Thank you. Let me follow up on some of Justice Bridges' questions. So wasn't the behavior, the sleeping, in the car, in the intersection, a significant indicia of a DUI? I wouldn't say it was not. I wouldn't, well, again, I would say that we don't know here. Again, I would emphasize, we don't, there's nothing that says that nodding off momentarily is significant indicia of a DUI. There could be lots of reasons that someone could nod off momentarily or even, again, appear to be nodding off because, you know, it's hard from 10 o'clock at night for someone driving by to really ascertain what's going on in another person's car. But again, even assuming that this person saw him nodding off behind the wheel, even if that's decreased vigilance, it doesn't equate to a particularized and objective basis for suspecting a DUI. There's lots of reasons that a person might appear to be sleeping. And again, I would emphasize that the facts of this case are what make it so different. This is a very fact-specific case, but doesn't reasonable suspicion take in the totality of the circumstances? I mean, it makes reasonable inferences into considering reasonable suspicion based upon the totality of the circumstance. But I don't think that... Isn't that what Navarette says? Navarette says you can look at the totality of the circumstances, but again, you have to look at what the officer knew when he made that stop. Did the officer have reasonable suspicion? Not if this citizen had any kind of reasonable suspicion. So what did the officer know? And all the officer was... Right, right. No, I'm not asking about the citizen. I'm asking you about the officer. When the officer, who is a police officer and has a lot of experience, hears that somebody is asleep in the middle of the intersection at 10 o'clock at night. I mean, it's not an extremely late time of the night. It's like 1 or 2 or 3 in the morning where somebody might have been exhausted. 10 o'clock at night. I mean, doesn't the officer have that ability to take those facts into consideration in determining reasonable suspicion? Well, I would correct one thing, Your Honor. I think that you, yourself, as well as some of the others, keep saying the middle of the intersection. There's no report that he was in the middle of the intersection. Okay. He was in a red light. I apologize. So there's just no evidence that he was stopped inappropriately when he may have been nodding off. And I don't think that 10 p.m. actually makes very much difference. As many people who work different shifts or have young children, someone could be nodding off at 7 in the morning, and that doesn't necessarily mean anything other than they're driving tired. The point is we just don't – all the officer knows is there was someone who appeared to be asleep at an intersection, and then they drove away safely and went to Culver's, and then the officer sees Mr. Shelton at Culver's, doesn't witness any dangerous driving, and just pulls him over. What I'm saying is that is not enough without more facts. How about the time between the call and the time – I mean, in the Navarrete case, there was, I think, 18 minutes between the time between the call and the time of finding that pickup truck in that case that allegedly ran somebody off the road. In this case, isn't it the same here? It was a very short period of time between the time of the call and the time the car was still in the area. I don't think the short period of time – I think if anything, the short period of time works against reasonable suspicion in this case because it's not that this – because in Navarrete, we have someone being run off the road, which is very dangerous. In this case, we have maybe someone was asleep temporarily at an intersection, but oh no, they're driving away safely, and oh, they're going to Culver's. And then by the time the officer sees him, he's just driving through the Culver's drive-through without any other issues. So here, the fact that this was so short, such a momentary lapse of maybe this person was sleeping temporarily, I think that works against the reasonable suspicion because it's not – and I think in Navarrete, they do talk about it needs to be reasonable suspicion of an ongoing crime rather than an isolated incident of act recklessness. I think that's significant that the court uses that language. It can't just be that, oh, I think this person – and that's why the court talks about, you know, if someone's just going slightly over the speed limit or the report is they're not wearing their seatbelt, that's not enough for the officer to pull them over without more. And I think that what we have here with the citizen saying, I think this person might be asleep at the intersection, oh wait, now they're driving down the road, is more like that driving slightly over the speed limit or not wearing a seatbelt than it is like, hey, this person ran me off the road and it's very dangerous. What indication, excuse me, is there of any bias of this tipster? Are we to question any bias of the tipster? I mean, there's a case that they relied upon in Navarrete, and I know I didn't write it down and the name of it escapes me, where the woman said, okay, I live near this person, they're leaving the house, they're driving this car. You know, she had all these different tips and they knew who she was. How do we, and why is it that we should immediately infer that this tipster is biased or is not telling the truth? I'm not suggesting this court should infer that this tipster is biased or is not telling the truth. What I'm saying is that because it is an anonymous tipster, there does need to be, what the Navarrete court is saying, I mean, you're looking at all these cases they talk about, there is some inherent reliability with someone calling the 911 system, but even assuming that this tip is reliable, they still need to have this, the tip has to have enough to create this reasonable suspicion of ongoing crime, and they talk about this dangerous result. So the thing is, even if we don't question that she has any bad motives, they're still based on Navarrete not this license to pull people over based on anonymous tips where they don't give enough for the police to know there's a dangerous condition. Right. I gotcha. I gotcha. I have no further questions, Ms. Johnson. Thank you so much for your time. And I personally want to apologize for dropping the ball on failing to send out the notice with respect to no oral before publishing the opinion. Sometimes things slip through the cracks and I take full responsibility. So thanks for pointing it out and you will have your time in rebuttal. Thank you. Okay.  Thank you, Your Honors. Good morning. My name is Ivan O. Taylor, Jr. Arguing on behalf of the people. Defendant's trial counsel was not ineffective for not filing a motion to suppress, as the motion would not have been meritorious. Defendant has presented no reasonable explanation that would invalidate this court's previous analysis in its January 17th opinion. Navarrete is an extension of the principles established in the White and Gates that as long as an officer has reasonable suspicion from a 911 call that gives adequate information, that makes the stop valid. While Navarrete was stated to be a closed case, this case is still on a spectrum. While the United States Supreme Court stated that driving without wearing a seatbelt and minor speeding were only incidents of past recklessness, not actions of ongoing offense, running an individual off the road is indicative of an ongoing criminal activity like drunk driving. Falling asleep behind a wheel is more like running a vehicle off the road as indicative of an ongoing activity like drunk driving. Your Honors have mentioned the community caretaking. Defendant has stated repeatedly that there could be lots of reasons for someone to be asleep behind a wheel. In that instance, Officer Beamon even stated during the hearing on the motion of limine that she was dispatched for a welfare check. An officer checking on an individual who has fallen asleep behind a wheel while it's running on a public way is an action of community caretaking, as the limited amount of seizure that it will cause is to ensure that this person will not fall asleep again while still on a public way. Defendant seems to be indicating that it was only a minor amount of sleep occurred, but there's no indication of this. Defendant was asleep long enough for another vehicle to happen upon him while he was still at an intersection and was able to then relay when he finally woke up and was able to drive down. To say that the sleep was just minor does little to assist, because even if the sleep was only minor, it's still an action that is ongoing in criminal activity. It is for these reasons that the people believe that this court's opinion on January 17th was correct and that the trial counsel was not ineffective for not filing a motion to suppress. Do you honors have any questions for me? Justice Shostak, you may be muted. Ah. We may have lost Justice Shostak. Hold on, everyone. Hello. There you are. I'm sorry. I dropped off. I don't know why. You can continue, Mr. Taylor. I'm sorry. Mr. Taylor. I've concluded. Actually, anyone have any questions? Okay. Did Justice Hudson have any questions? Yes, a couple of questions. Mr. Taylor, would you agree that the Apollo reported that the defendant was asleep at the wheel while sitting in his vehicle at an intersection? That is essentially what the officer responded to. Is that correct? That is correct, Your Honor. And what is your response to Ms. Johnson's argument that in this case, someone may have fallen asleep at a wheel in an intersection at 10 o'clock at night, but there's no additional indicia of dangerous condition or dangerous situation that that conduct created, seeming to be implying that Navarrete, that was a consideration. What's your response to that position? That is not a consideration, Navarrete. It wasn't whether or not – it's just look at the activity in and of itself, not whether that activity caused some other additional dangerous condition. In Navarrete, the activity was the defendant in his vehicle running another vehicle off the road. In this case, the activity is the defendant falling asleep behind his vehicle while at an intersection on a public road. Okay, so you don't agree that Navarrete seems to create an additional element beyond falling asleep at an intersection at 10 o'clock at night, correct? Correct. There's no additional element created by Navarrete. All right, thank you. Justice Shostak, that's all I have. Justice Ritchie. Yes, thank you. Mr. Taylor, other than the CDC, can you cite any authority to support your position that falling asleep at the wheel, you put that in your brief? I cannot think of any other official citations at the moment about whether or not that alcohol causes drowsiness. That CDC citation is more indicating that drowsiness results in someone falling asleep, and drowsiness while driving is very dangerous. That's why so many medications have that as a possible side effect, and to be careful while operating a motor vehicle, because it leads to an instance where you could be driving and you will fall asleep and not realize that you've created a dangerous condition. But as for the question, I can't think of another citation at this point. Okay, and that was the only one I found that you cited. That's why I asked. The next question I have is, what information provided by the caller to dispatch suggests that the defendant in this case was involved in some type of criminal activity? Any that you can point to? Yes, the caller observed the defendant asleep behind the wheel while he was stopped at the intersection. Why should I be falling asleep behind the wheel while operating a motor vehicle while on a public road? The caller observing that action is what led to the stop. And lastly, if you could respond to the question that I had asked Ms. Johnson regarding the community caretaker function. What is your assessment? Had a motion to suppress been filed, would that have been successful, that argument? For community caretaker, it could have been successful. As the defendant stated, there could be multiple reasons that he has fallen asleep behind the wheel. And even Officer Beeman testified saying that he was responding to a welfare check. For this observation of the defendant being asleep behind the wheel on the vehicle, even though he did wake up, an officer should be able to allow to check this individual to make sure why he fell asleep. It could have been something simple as being so tired from work. It could be this situation. He was under the influence of alcohol. It could be an issue dealing with medication. But it would still be reasonable for an officer to check an individual who has fallen asleep behind the wheel and got a call. Like it was mentioned before, if the officer had driven onto the scene and observed this individual, he would not be able to temporarily seize him, nor to ensure either if he was okay or to do an investigation. So as to your question... Thank you. No, thank you, Mr. Taylor. Thank you, Justice Shostak. I have no further questions. Thank you. Mr. Taylor, here is a little different than in the Navarrete case. Navarrete case, it was really a startling event that made the caller call into the police. It's almost like an excited utterance, if you will. It was a startling event. I've been run off the road. In this case, we don't really have that. How do we know that this caller was telling the truth as the defense asked in Navarrete? And are we to determine whether the tip was reliable? How do we do that? In determining the reliability of the tip is the same within Navarrete. In Navarrete, we had the caller describe the vehicle, describe the activity, and the location. And that was in the description of the vehicle, the location, and what occurred is what the officers were given. And when it came upon the defendant in Navarrete, he was driving appropriately at the time, but he was still pulled over. In this situation, in this situation, it's the same thing. This individual called 911 because they made an observation and gave a correct description to the police, who were then able to pull this person over. And while this person has been referred to as being a nominous, but they weren't. They followed the defendant. They called 911. They gave information to 911. They're not just an unknown entity. They exist. Right, but they are anonymous. It's still anonymous. They don't know who it was. Correct? Well, first of all, the call can be traced in itself. Number one, also, the defendant is not contesting the reliability of what was stated. The defendant has already conceded that the information was sound. They're only contesting whether or not that information was sufficient. Okay, I have no further questions. Thank you. Thank you, Your Honors. Ms. Johnson, your rebuttal. Thank you, Your Honors. I would like to first address this community caretaking. I want to point out, not only did the state below say that there was no other justification for the stop, but the state didn't argue in its briefing that there was community caretaking involved in this case at all, and really has forfeited that argument. And they're just bringing up now for the first time an oral argument after all the briefings have been completed. I know that's only a limitation on the parties and not the court, so I would emphasize, as I argued before, that community caretaking is not implicated here, if you look at McDonough, which this court footnoted in its opinion, because there is no other purpose in investigating a crime at the point Officer Beeman stopped Mr. Shelton. In McDonough, the person was stopped on the side of the road when the officer encountered them. We don't have that here. All the community caretaking has been negated in this case, because by the time the officer has encountered Mr. Shelton, the caller has already reported that he's driving down the road. He's gone to Culver's. Officer Beeman sees him in the Culver's drive-thru and then leaving Culver's driving completely normally with no issues. So there's no community caretaking here. I would also like to point out one thing that Mr. Taylor said. He seemed to indicate that the officer could have stopped Mr. Shelton just based on sleeping and nothing else without any reasonable suspicion of drunk driving. And that's simply not true from Navarette. He said, Mr. Taylor said, one should not be falling asleep behind the wheels. One should not be driving without a seatbelt or over the speed limit. However, Navarette specifically states that those types of infractions, if a 911 caller reported, hey, this person is not wearing a seatbelt or, hey, this person is slightly speeding, that would not be enough to give an officer reasonable suspicion for a traffic stop. So simply a caller reporting, hey, there's some minor traffic behavior is not enough to give an officer reasonable suspicion. What Navarette says specifically at 402, it's 572 U.S. 402, it talks about the fact that even a reliable tip will justify an investigative staff only if there's criminal activity that may be afoot. And they talk about the fact that it needs to be a suspicion of an ongoing crime such as drunk driving as opposed to an isolated incident of past recklessness. And then at 403, the court, after talking about these other behaviors such as not wearing a seatbelt or speeding that are not enough for a stop, at 522 U.S. 403, the court says the 911 caller in this case reported more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver's conduct, running another car off the highway. So here, it's really not enough to just say this person was sleeping for a momentary amount of time. And I know Mr. Taylor said we don't know how long. We don't know how long, but we do know that by the time the caller got on the phone and said this person appears to be sleeping at the intersection, they very quickly followed up, oh, they're driving down the road now and they're at Culver's, before the police could even dispatch anyone to respond, that information was already being relayed. So we know it was a short amount of time based on that. Here, because there just simply was not enough information in this 911 caller's report to justify a reasonable suspicion of an ongoing crime, and drunken driving is serious, and this is actually, Justice Scalia said it in his dissent, albeit, but he said drunken driving is serious, but so is the loss of our freedom to come and go as we please without police interfering. I think that's important. These stops implicate the Fourth Amendment. So there needs to be more than just a small amount of information from an anonymous caller, and that's the problem here. We only have this limited information that does not implicate this dangerous conduct from Navarrete that doesn't give the officer enough reasonable suspicion. And because there wasn't enough reasonable suspicion from the 911 tip, a motion to suppress would have been successful in this case. And because the motion to suppress would have been successful, counsel wasn't effective for failing to file it because it would have prevented Mr. Shelton's prosecution for DUI completely. And so on that basis, again, I would request this court reverse Mr. Shelton's conviction outright. Okay. Thank you very much. Any questions? I do. Johnson, you seem to be suggesting that the court in Navarrete found these are the facts here, and this level of detail is sufficient to validate the stop. You seem to be taking that to imply that anything less would not be sufficient, and you did allude to earlier the fact that the court held that reasonable suspicion need not rule out the possibility of an innocent explanation. Correct? That's in Navarrete? That's correct, but I guess how I would respond to that is that there needs to be, although it doesn't need to rule out innocent conduct, there needs to be more than just a conclusory allegation, or as I said, these other things, and the court uses a language that are so tenuously connected to drunk driving. Here, they specifically said that because this person was run off the road, it was a specific and dangerous result, and that continues to say that bears a great resemblance to the paradigmatic manifestations of drunken driving. Here, temporarily nodding off the intersection does not bear too great a resemblance to the paradigmatic, you know, manifestation of drunken driving, because we don't have someone who's causing danger to the other people on the roadway that we had in Navarrete, and I would emphasize again that Navarrete emphasized that was a closed case, and the problem here is we fall on the other side of that line. There just aren't enough facts to show that specific and dangerous result of the defendant's conduct here. Let me ask you a pointed question. Do you have any authority that you can cite to us that stands for the proposition that falling asleep at 10 o'clock at night in an intersection with no other explanation is not sufficient? To create a reasonable suspicion, do you have any cases you can cite to us that are on all fours with the facts of this case? I don't, Your Honor, and obviously that's because, as I've emphasized, these are all very fact-specific inquiries, but I would again urge this court that when you look at what we're talking about in Navarrete of running someone off the road, it's very different, because that caller, as the court states, the caller's claim that another vehicle ran off the road necessarily implies that the informant knew the other car was driving dangerously. We don't have any implication here that Mr. Shelton was driving dangerously, so there aren't any cases that are factually identical to this because these are all so fact-specific, but I think if you look at the reasoning and the language of Navarrete, it's very clear that this case falls short of what the court was requiring. Is it your position that the police cannot pull a vehicle over unless the driver is exhibiting dangerous behavior? To pull them over based on a 9-1-1 tip, because again, the police can pull someone over if they witness something, but we don't have the police witnessing anything here. We have the police pulling someone over based on an anonymous 9-1-1 tip, which is where we need to be careful and really consider these Fourth Amendment concerns, and because of that, it's not enough to pull someone over in this case without the driver having some knowledge of dangerous driving by the other party. All right, I have no further questions. Thank you. Thank you. Justice Bridges, anything further of Ms. Johnson? Justice Bridges? Sorry, I just said I forgot to unmute myself. I have nothing further. Thank you. Thank you very much. Thank you, Ms. Johnson, Mr. Taylor, for your arguments here today. We will take the arguments under consideration, review, conference, and we will make a decision in due course. Court is adjourned for the day. Thank you so much. Thank you.